**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **Christopher Sontag,**<br><br>***On behalf of himself and those similarly situated,***<br><br>**Plaintiff,**<br>**v.**<br><br>**Pizza Hut of Southeast Kansas, Inc.; Fugate Enterprises, LLC; Ryan Wasinger; Doe Corporation 1-10; John Doe 1-10;**<br><br>**Defendants.** | **Case No. 26-2443**<br><br>**Jury Trial Demanded** |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

1. Christopher Sontag, on behalf of himself and similarly-situated individuals, brings this action against Defendants Pizza Hut of Southeast Kansas, Inc.; Fugate Enterprises, LLC; Ryan Wasinger; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the statutory laws of Kansas, Kentucky, Missouri, Oklahoma, Oregon, and Tennessee ("state statutes").

2. Upon information and belief, Defendants operate at least 94 Pizza Hut franchise locations in Kansas, Kentucky, Missouri, Oklahoma, Oregon, Tennessee, and Texas.

3. Plaintiff seeks to represent the delivery drivers who have worked at all of the Pizza Hut stores operated by Defendants nationwide (the "Defendants' Pizza Hut stores").

4. Defendants repeatedly and willfully violated the FLSA and the state statutes by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum and overtime wages for all hours worked.

5. All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiff, have been subject to the same or similar employment policies and practices with respect to wages and reimbursement for expenses.

6. Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7. Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in Kansas, Kentucky, Missouri, Oklahoma, Oregon, and Tennessee, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 *et seq.*; Minimum Wage and Maximum Hours Law ("MWMHL"), K.S.A. § 44-1201, *et seq.*; Kentucky Minimum Wage Law, KRS § 337.275 ("KMWL"); the Missouri Wage and Hour Law ("MWHL"), Mo. Rev. Stat. 290.505; and other relevant state statutes.

8. Defendants have been unjustly enriched by their delivery drivers when the delivery drivers use their personal vehicles for the benefit of Defendants.

## JURISDICTION AND VENUE

9. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims and supplemental jurisdiction over Plaintiff's state law claims.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## THE PARTIES

**<u>Plaintiff</u>**

**Christopher Sontag**

11. Plaintiff Christopher Sontag is a resident of Kansas.

12. Plaintiff is an "employee" of the Defendants as defined in the FLSA, KWPA, and MWMHL.

13. Plaintiff has given written consent to join this action.

14. Plaintiff seeks to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who acts or has acted directly or indirectly in the interest of the Defendants' Pizza Hut stores in relation to Plaintiff and similarly situated delivery drivers.

**Defendants**

15. Defendants Pizza Hut of Southeast Kansas, Inc., Fugate Enterprises, LLC, and Ryan Wasinger make up, in whole or in part, the organized group of persons or entities who act or have acted directly or indirectly in the interest of the Defendants' Pizza Hut stores in relation to Plaintiff and similarly situated delivery drivers.

16. To the extent additional entities or individuals make up part of the organized group of persons who act or have acted directly or indirectly in the interest of the Defendants' Pizza Hut stores in relation to Plaintiff and similarly situated delivery drivers, Plaintiff seeks to hold those entities or individuals liable as "employers" for the violations alleged herein.

**Pizza Hut of Southeast Kansas, Inc.**

17. Defendant Pizza Hut of Southeast Kansas, Inc. is a domestic corporation, authorized to do business under the laws of the state of Kansas, with its principal place of business at 208 S. Maize Road, Wichita, KS 67209.

18. Upon information and belief, Pizza Hut of Southeast Kansas, Inc. has entered into a franchise agreement with Pizza Hut, LLC ("Franchisor") to operate Pizza Hut Pizza Stores to sell pizza and other authorized products through delivery and carry-out services.[1]

19. Upon information and belief, the Franchisor has substantial control over the franchisee's operation, including through certain agreements and programs, including but not limited to, a corporate operations agreement, a marketing agreement, brand standards, the Pizza

---

[1] *See* Franchise Disclosure Document, available at *https://www.restfinance.com/app/pdf/fdd/Pizza-Hut-2024.pdf*

Hut Gift Card Program, the Hut Rewards Loyalty Program, an online ordering and service agreement, and agreements to purchase, sell, and/or use Franchisor-approved food ingredients, beverage products, cooking, packaging, and cleaning materials, other products, utensils, uniforms, menus, forms, and other supplies and materials.

20. Upon information and belief, these agreements and programs allow the Franchisor to provide services to, and to maintain a direct relationship with, end customers.

21. Upon information and belief, Defendants entered into a franchise agreement with Franchisor to operate Pizza Hut Pizza Stores to sell items uniquely identified with the Franchisor and other authorized products through delivery and carry-out services, and that agreement requires Defendants to buy or lease items from certain approved suppliers and distributors.

22. Upon information and belief, the Franchisor and Defendants form an integrated distribution chain.

23. Pizza Hut of Southeast Kansas, Inc. owns and operates Pizza Hut Pizza stores in Kansas, Kentucky, Missouri, Oklahoma, Oregon, Tennessee, and Texas.

24. Pizza Hut of Southeast Kansas, Inc. is owned, operated, and directed by Ryan Wasinger.

25. Pizza Hut of Southeast Kansas, Inc. is an entity that has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

26. Pizza Hut of Southeast Kansas, Inc. is the entity that appears on Plaintiff's paystubs for work he completes for Defendants.

27. Pizza Hut of Southeast Kansas, Inc. may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

28. Pizza Hut of Southeast Kansas, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

29. Upon information and belief, Pizza Hut of Southeast Kansas, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

30. Pizza Hut of Southeast Kansas, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

31. At all relevant times, Pizza Hut of Southeast Kansas, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

32. Pizza Hut of Southeast Kansas, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and the state statutes.

33. At all relevant times, Pizza Hut of Southeast Kansas, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

34. Pizza Hut of Southeast Kansas, Inc.'s gross revenue exceeds $500,000 per year.

**Fugate Enterprises, LLC**

35. Defendant Fugate Enterprises, LLC is a domestic corporation, authorized to do business under the laws of the state of Kansas, with its principal place of business at 208 S. Maize Road, Wichita, KS 67209.

36. Upon information and belief, Fugate Enterprises, LLC has entered into a franchise agreement with Pizza Hut, LLC ("Franchisor") to operate Pizza Hut Pizza Stores to sell pizza and other authorized products through delivery and carry-out services.

37. Upon information and belief, the Franchisor has substantial control over the franchisee's operation, including through certain agreements and programs, including but not limited to, a corporate operations agreement, a marketing agreement, brand standards, the Pizza Hut Gift Card Program, the Hut Rewards Loyalty Program, an online ordering and service agreement, and agreements to purchase, sell, and/or use Franchisor-approved food ingredients, beverage products, cooking, packaging, and cleaning materials, other products, utensils, uniforms, menus, forms, and other supplies and materials.

38. Upon information and belief, these agreements and programs allow the Franchisor to provide services to, and to maintain a direct relationship with, end customers.

39. Upon information and belief, Defendants entered into a franchise agreement with Franchisor to operate Pizza Hut Pizza Stores to sell items uniquely identified with the Franchisor and other authorized products through delivery and carry-out services, and that agreement requires Defendants to buy or lease items from certain approved suppliers and distributors.

40. Upon information and belief, the Franchisor and Defendants form an integrated distribution chain.

41. Upon information and belief, Fugate Enterprises, LLC owns and operates Pizza Hut Pizza stores in Kansas, Kentucky, Missouri, Oklahoma, Oregon, Tennessee, and Texas.

42. Upon information and belief, Fugate Enterprises, LLC is owned, operated, and directed by Ryan Wasinger.

43. Upon information and belief, Fugate Enterprises, LLC is an entity that has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

44. Upon information and belief, Fugate Enterprises, LLC may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

45. Upon information and belief, Fugate Enterprises, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

46. Upon information and belief, Fugate Enterprises, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

47. Upon information and belief, Fugate Enterprises, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

48. Upon information and belief, at all relevant times, Fugate Enterprises, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees,

including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

49. Upon information and belief, Fugate Enterprises, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and the state statutes.

50. At all relevant times, Fugate Enterprises, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

51. Fugate Enterprises, LLC's gross revenue exceeds $500,000 per year.

**Ryan Wasinger**

52. Ryan Wasinger is the president and Chief Executive Officer ("CEO") of Pizza Hut of Southeast Kansas, Inc.

53. Ryan Wasinger is the President of Fugate Enterprises, LLC.

54. Ryan Wasinger is the person who has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

55. Ryan Wasinger may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

56. Ryan Wasinger is individually liable to the Defendants' Pizza Hut stores' delivery drivers under the definitions of "employer" set forth in the FLSA and applicable state statutes because he operates the Defendants' Pizza Hut stores, serves as the president and CEO of Pizza Hut of Southeast Kansas, Inc., serves as president of Fugate Enterprises, LLC, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately has

control over compensation and reimbursement of employees. 29 U.S.C. § 203(d); K.S.A. § 44-313.

57. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC Ryan Wasinger has had financial control over the operations at each of the Defendants' Pizza Hut stores.

58. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has a role in significant aspects of the Defendants' Pizza Hut stores' day-to-day operations.

59. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had control over the Defendants' Pizza Hut stores' pay policies.

60. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

61. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Pizza Hut stores.

62. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had the

power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

63. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had the power to transfer the assets and liabilities of the Defendants' Pizza Hut stores.

64. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had the power to declare bankruptcy on behalf of the Defendants' Pizza Hut stores.

65. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

66. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

67. At all relevant times, by virtue of his role as president and CEO of Pizza Hut of Southeast Kansas, Inc. and President of Fugate Enterprises, LLC, Ryan Wasinger has authority over the overall direction of each of Defendants' Pizza Hut stores and is ultimately responsible for their operations.

68. The Defendants' Pizza Hut stores function for Ryan Wasinger's profit.

69. Ryan Wasinger has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Doe Corporation 1-10**

70. Upon information and belief, Defendants own, operate, and control other entities and/or corporations that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and the state statutes.

71. Upon information and belief, there are other entities within Defendants' Pizza Hut operation who qualify as "employers" to a number of members of the putative FLSA collective class and putative Rule 23 class.

72. Upon information and belief, Ryan Wasinger owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Pizza Hut stores operation.

73. Upon information and belief, the Franchisor, Tasty Hut, LLC and/or related entities may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

74. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

75. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and the state statutes.

76. Upon information and belief, Ryan Wasinger has entered into relationships with a number of his managers and business partners, and those individuals might also qualify as

"employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and the state statutes.

77. Upon information and belief, Brian Sapp, Ronald Bazzelle, and/or Brett Wasinger may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

78. Upon information and belief, J. Larry Fugate was an owner of Defendants' Pizza Hut stores before his passing in 2024.

79. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### CLASS-WIDE FACTUAL ALLEGATIONS

80. During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

81. Plaintiff, and the similarly situated persons Plaintiff seeks to represent, are current and former delivery drivers at the Defendants' Pizza Hut stores.

82. All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties—to deliver Pizza Hut Pizza's pizza and other items (such as bottles of soda, plates, utensils, napkins, chicken wings, breads, desserts, dipping sauces and salad dressings, and other foods items) to Defendants' customers.

83. Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

84. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other items (such as bottles of soda, plates, utensils, napkins, chicken wings, breads, desserts, dipping sauces and salad dressings, and other foods items).

85. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

86. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, and paid financing, licensing, and registration charges for the benefit of Defendants.

87. The Defendants' Pizza Hut stores reimburse their delivery drivers based on a flat rate per delivery.

88. Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

89. The Defendants' Pizza Hut stores do not track or record the delivery drivers' actual expenses.

90. The Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

91. The Defendants' Pizza Hut have never informed their delivery drivers that they should maintain records of the expenses they incur while using their vehicles for Defendants' business purposes.

92. The Defendants do not permit their delivery drivers to submit expense receipts for purposes of reimbursing the costs associated with the use of their vehicles for Defendants' business purposes.

93. The Defendants' Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

94. The Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses the delivery drivers incur.

95. The Defendants' Pizza Hut stores do not reimburse their delivery drivers for their vehicle expenses during the workweek in which the costs are incurred.

96. The Defendants' Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

97. The Defendants' Pizza Hut stores do not reasonably approximate the delivery drivers' expenses.

98. The Defendants' Pizza Hut stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

99. According to the Internal Revenue Service, the average cost of operating a vehicle in the United States during the relevant time periods have been:

a. 2023: 65.5 cents/mile
b. 2024: 67 cents/mile

c. 2025: 70 cents/mile
d. 2026: 72.5 cents/mile

100. The delivery drivers' vehicle expenses incurred for Defendants' benefit exceed the IRS standard business mileage rate.

101. Upon information and belief, the IRS standard business mileage rate does not include all vehicle expenses incurred by drivers for Defendants' benefit, including financing costs.

102. The IRS standard business mileage rate is the average cost of driving a car, according to the IRS, and it is a conservative estimate because it is an estimate that reflects an average driver.

103. The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those incurred by the average driver—*e.g.*, increased wear and tear to the interior and exterior of the car, constant starting and stopping of the engine, and the nature of the driving itself (start and stop, idling, etc.).

104. Driving a vehicle for purposes of pizza delivery results in increased costs to the delivery drivers because it involves more starting and stopping, turning on/off the car, and general wear-and-tear from having pizza and other equipment in or on the car. This type of use accelerates depreciation and accelerates the need for maintenance and repair.

105. Defendants' delivery drivers incur greater expenses than the average driver for the benefit of Defendants.

106. The delivery drivers at Defendants' Pizza Hut stores advance business expenses, interest free, to Defendants when they provide cars to use at work.

107. Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

108. Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

109. Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

110. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and applicable state wage laws.

111. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

112. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

113. Defendants have willfully failed to pay federal minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores, have taken unauthorized deductions from the delivery drivers' wages, have failed to pay the delivery drivers all wages due, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

114. Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries – they do not have to incur the expense themselves.

115. The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs.

116. It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

**PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS**

117. Plaintiff has worked at the Pizza Hut store #029190, located on 2452 South Seneca in Wichita, Kansas since October 03, 2024.

118. When Plaintiff is not delivering food and other items, he works inside the restaurant. His work inside the restaurant includes boxing pizzas, cleaning, and completing other duties inside the restaurant as necessary.

119. Plaintiff works dual jobs.

120. Plaintiff's inside duties are not related to his delivery duties.

121. Plaintiff is required to use his own car to deliver pizzas.

122. Plaintiff is required to use his own cell phone when delivering pizzas.

123. Plaintiff makes $7.25 for all hours worked.

124. During his employment with Defendants, Plaintiff has been reimbursed on a flat rate per delivery of $1.65.

125. During his employment with Defendants, if an order is cancelled by the customer while the delivery is in progress, Defendants do not reimburse Plaintiff anything for the delivery.

126. Plaintiff is required to maintain and pay for an operable, safe, and legally compliant automobile to use in delivering Defendants' pizza and other items.

127. During his employment Plaintiff has maintained, paid for, and operated a 2013 Chevy Suburban to complete deliveries of pizza and other items for Defendants.

128. Plaintiff's Chevy Suburban gets about 15 miles per gallon of gas while he delivers pizza and other items for Defendants.

129. Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

130. Plaintiff purchases gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurs cell phone and data charges all for the primary benefit of Defendants.

131. Defendants do not track the actual expenses incurred by Plaintiff.

132. Defendants do not ask Plaintiff to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

133. Defendants' Pizza Hut stores do not collect receipts from Plaintiff related to the expenses he incurs while completing deliveries.

134. Defendants do not collect receipts of Plaintiff's gasoline purchases during weeks when he works for Defendants.

135. Defendants do not collect receipts of Plaintiff's automobile maintenance, repair, and parts purchased or paid for during weeks when he works for Defendants.

136. Defendants do not collect receipts of Plaintiff's monthly or annual automobile insurance costs.

137. Defendants do not collect receipts of Plaintiff's automobile registration costs.

138. Defendants do not collect receipts of Plaintiff's automobile financing or purchase costs.

139. Defendants do not collect any other receipts from Plaintiff related to the automobile expenses he incurs as a delivery driver at Defendants' Pizza Hut stores.

140. Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

141. Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

142. Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

143. Plaintiff's costs incurred for the benefit of Defendants exceed the IRS standard business mileage rate because of the nature of pizza delivery driving (start and stop, on and off, increased wear and tear by the nature of the work).

144. Plaintiff's costs incurred for the benefit of Defendants exceed the $1.65 per delivery he receives.

145. Defendants do not reimburse Plaintiff for actual vehicle expenses Plaintiff incurs for Defendants' benefit during the workweek he incurs them.

146. Plaintiff estimates that he completes three deliveries per hour.

147. Plaintiff estimates that his deliveries are, on average, 7 miles per delivery.

148. Plaintiff estimates that he incurred vehicle expenses exceeding the IRS standard business mileage rate, but using the 2025 IRS rate as a conservative estimate of Plaintiff's per-mile vehicle costs in 2025, Plaintiff was under-reimbursed by $9.87 per hour (3 deliveries × 7 miles × ($.70 - $.23 ($1.65/7)) = $9.87 per hour).

149. The kickback of $9.87 per hour results in Plaintiff being paid less than zero dollars per hour for each hour he worked on the road delivering pizza and other items for Defendants ($7.25 - $9.97 = -$2.72).

150. Plaintiff did not authorize any reduction or deduction to his pay in a written contract of hiring entered into at the time of hiring.

151. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by the FLSA and Kansas wage and hour law.

152. Defendants have been unjustly enriched by Plaintiff in that he uses his own vehicle and incurs vehicle-related expenses for Defendants' benefit.

153. Plaintiff occasionally works more than 40 hours a week during his employment with Defendants.

154. Defendants did not properly calculate Plaintiff's overtime rate in violation of the FLSA and Kansas wage and hour law.

155. Defendants have not paid Plaintiff for all of the overtime wages he has earned in violation of the FLSA and Kansas wage and hour law.

## COLLECTIVE ACTION ALLEGATIONS

156. Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

157. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decisions, policies, plans, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, for failing to reimburse delivery drivers for automobile expenses and other job-related expenses, and for refusing to pay proper overtime wages for all hours worked in excess of 40 hours in a workweek Plaintiff's claims are essentially the same as those of the FLSA Collective.

158. Defendants' unlawful conduct is pursuant to a company policy or practice.

159. Defendants are aware or should have been aware that federal law requires them to pay employees minimum wage for all hours worked, time and a half overtime wages for hours worked in excess of 40 per week, and to fully reimburse for "tools of the trade."

160. Defendants are aware or should have been aware that they are obligated to actually pay the wage rate that they informed Plaintiff and other delivery drivers that they would pay.

161. Defendants' unlawful conduct has been widespread, repeated, and consistent.

162. The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

163. The FLSA Collective members are readily identifiable and ascertainable.

164. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**CLASS ACTION ALLEGATIONS**

165. Plaintiff brings the Third Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the states of Kansas, Kentucky, and Missouri between three years and in the state of Oregon between six years prior to the filing of the complaint to the date of final judgment in this matter ("Rule 23 Minimum Wage Class").

166. Plaintiff brings the Fourth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the states of Kansas, Kentucky, Missouri, and Oklahoma between three years and in the state of Oregon between six years prior to the filing of the complaint to the date of final judgment in this matter ("Rule 23 Overtime Wage Class").

167. Plaintiff brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the states of Kansas, Kentucky, Oklahoma, and Tennessee between 3 years; and in the state of Oregon between 6 years prior to the filing of the complaint to the date of final judgment in this matter ("Rule 23 Untimely Wage Payment Class) (together with the Rule 23 Minimum Wage Class and Rule 23 Overtime Wage Class "Rule 23 Wage Class").

168. Plaintiff brings the Sixth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the state of Kansas, Oklahoma, and Tennessee between three years; Texas between 4 years; Kentucky and Missouri between 5 years; and Oregon between 6 years prior to the filing of the complaint to the date of final judgment in this matter ("Rule 23 Unjust Enrichment Class") (together with Rule 23 Minimum Wage Class, Rule 23 Overtime Wage Class and Rule 23 Untimely Payment Class, "Rule 23 Class").

169. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

170. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

171. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class member are determinable from Defendants' records.

172. All of the records relevant to the claims of Rule 23 Class members should be found in Defendants' records.

173. For the purpose of notice, and other purposes related to this action, the Rule 23 Class members' names and contact information are readily available from Defendants.

174. Notice can be provided by means permissible under Rule 23.

175. The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

176. There are more than 50 Rule 23 Class members.

177. Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Class, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Class in separate actions.

178. Plaintiff and the members in the Rule 23 Class are subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime wages, and failing to reimburse for expenses.

179. Plaintiff and the members in the Rule 23 Class sustain similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

180. The Rule 23 Class members have unjustly enriched Defendants in the same way – by providing automobiles for use in their business at no cost to Defendants.

181. By seeking to represent the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his similarly situated co-workers.

182. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the members in the Rule 23 Class.

183. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

184. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however,

treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action

185. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

186. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

187. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a) Whether Plaintiff and the Rule 23 Class are subject to a common expense reimbursement policy;

b) Whether Plaintiff and the Rule 23 Class are subject to a policy that requires them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c) Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d) Whether Plaintiff and the Rule 23 Class were subject to a common policy that required them to provide and use cellphones to complete deliveries for Defendants;

e) Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f) Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Class members' actual vehicle expenses;

g) Whether Defendants reimbursed Plaintiff and the Rule 23 Class for their actual expenses;

h) Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate for the miles they drove in making deliveries;

i) Whether Defendants reimburse Plaintiff and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

j) Whether Defendants provided Plaintiff and the Rule 23 Class a mechanism or procedure through which the employees could submit supporting documentation of the expenses they incurred related to the use of their vehicles in the course of completing deliveries for Defendants;

k) Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class;

l) Whether Defendants took unlawful deductions from the wages of Plaintiff and the Rule 23 Class;

m) Whether Plaintiff and the Rule 23 Class are actually paid the wage rate they were promised by Defendants;

n) Whether Plaintiff and the Rule 23 Class receive all wages owed to them on regular paydays;

o) Whether Plaintiff and the Rule 23 Class conferred a benefit on Defendants that Defendants were aware of;

p) Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Class;

q) Whether it would be unjust for Defendants to retain the benefits conferred on them by Plaintiff and the Rule 23 Class without compensating for it;

r) Whether Defendants took improper deductions from the wages of Plaintiff and the Rule 23 Class by failing to adequately reimburse for vehicle expenses;

s) Whether Defendants acted willfully in setting policies that violate state wage and hour laws;

t) The nature and extent of class-wide injuries and the measure of damages for those injuries.

188. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

**CAUSES OF ACTION**

**COUNT 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

189. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

190. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

191. Each of the Defendants has at all relevant times been an “employer” of Plaintiff and the FLSA Collective as defined by the FLSA.

192. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

193. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to fully reimburse Plaintiff and the FLSA Collective for said expense.

194. Defendants’ failure to fully reimburse Plaintiff and the FLSA Collective for automobile and other job-related expenses resulted in Plaintiff and the FLSA Collective being paid less than the minimum wage rate they were due in some or all workweeks.

195. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

196. Plaintiff and the FLSA Collective have been damaged by Defendants’ willful failure to pay minimum wage as required by law.

197. As a result of Defendants’ willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys’ fees.

**COUNT 2**
**Failure to Pay Overtime Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

198. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

199. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than time and a half overtime wages for hours worked in excess of 40 hours per week.

200. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile and other job-related expenses out of pocket and failed/continue to fail to properly reimburse Plaintiff and the FLSA Collective for said expenses.

201. When Plaintiff and the FLSA Collective worked overtime hours, they were under-reimbursed the same way and according to the same policies as they were when they worked regular hours.

202. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

203. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay overtime wages as required by law.

204. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidate damages, costs, and attorneys' fees.

**COUNT 3**
**Failure to Pay Minimum Wages[2]**
**(On Behalf of the Rule 23 Minimum Wage Class)**

205. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

206. Plaintiff asserts this wage and hour law claim on behalf of the Rule 23 Wage Class members employed by Defendants in Kansas, Kentucky, Missouri, and Oregon.

207. Each of the Defendants has at all relevant times been an "employer" of Plaintiff and the Rule 23 Wage Class as defined by the state statutes for Kansas, Kentucky, Missouri, and Oregon.

208. Defendants paid the Rule 23 Wage Class at or close to minimum wage for the hours they worked on the road completing deliveries.

209. After accounting for automobile expenses, Defendants paid the Rule 23 Wage Class below minimum wage for the hours they worked on the road completing deliveries of food and other items for Defendants.

210. Because Defendants required the Rule 23 Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay the Rule 23 Wage Class minimum wage in violation of the state statutes for Kansas, Kentucky, Missouri, and Oregon.

---

[2] The Kansas Wage Payment Act ("KWPA") K.S.A. § 44-313 *et seq.*; the Kentucky Minimum Wage Law, KRS § 337.275 ("KMWL"); Missouri Wage and Hour Law, ("MWHL"), Mo. Rev. Stat. 290.500, *et. seq.*,; OR. Rev. Stat. § 653.025.

211. As a result of Defendants' willful violations, the Rule 23 Wage Class is entitled to damages including their unpaid wages and unreimbursed expenses, an equal additional amount as liquidated damages, costs, and attorney's fees.

**COUNT 4**
**Failure to Pay Overtime Wages [3]**
**(On Behalf of the Rule 23 Overtime Wage Class)**

212. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

213. Plaintiff asserts this wage and hour law overtime claim on behalf of the Rule 23 Wage Class members employed by Defendants in Kansas, Kentucky, Missouri, and Oklahoma from three years prior to the filing of this Complaint through the date of judgment.

214. Plaintiff asserts this wage and hour law overtime claim on behalf of the Rule 23 Wage Class members employed by Defendants in Oregon from six years prior to the filing of this Complaint through the date of judgment.

215. Each of the Defendants has at all relevant times been an "employer" of Plaintiff and the Rule 23 Wage Class as defined by the state statutes for Kansas, Kentucky, Missouri, Oklahoma, and Oregon.

[3] The Minimum Wage and Maximum Hours Law ("MWMHL"), K.S.A. § 44-1201, *et seq.*; KRS § 337.285; MWHL, Mo. Rev. Stat. 290.505; 74 Okl. St. § 840-2.15; OR. Rev. Stat. § 653.261.

216. Under the MWMHL, Defendants are required to pay Plaintiff and the Rule 23 Wage Class time-and-a-half their regular hourly rate for hours worked in excess of 46 hours per workweek. K.S.A. § 44-1204(a).

217. Defendants failed to pay the Rule 23 Wage Class all overtime wages owed.

218. As a result of Defendants' willful violations described herein, the Rule 23 Wage Class is entitled to damages including their unpaid overtime wages, costs, and attorney's fees.

**COUNT 5**
**Untimely Payment of Wages[4]**
**(On Behalf of Plaintiff and the Rule 23 Untimely Wage Payment Class)**

219. Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

220. Defendants have at all relevant times been an "employer" of Plaintiffs and the Rule 23 Wage Class.

221. Kansas, Kentucky, Oklahoma, Oregon, and Tennessee law requires that employers pay wages in full to their employees on regular paydays.

222. By reason of the acts alleged herein, Defendant failed to timely pay all wages due to Plaintiff and the Rule 23 Wage Class.

223. Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

---

[4] K.S.A. § 44-315; KRS § 337.020; 40 Okl. St. § 165.2; OR. Rev. Stat. § 652.120; Tenn. Code Ann. § 50-2-103.

224. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the Rule 23 Wage Class for unpaid wages, additional damages in an amount equal to twice the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest.

**COUNT 6**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Unjust Enrichment Class)**

225. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

226. Defendants' policies and practices have resulted in unjust enrichment in violation of the common law of Kansas, Kentucky, Missouri, Oklahoma, Oregon, Tennessee, and Texas.

227. The Rule 23 Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

228. Defendants are aware of and have accepted the benefit conferred on them by the Rule 23 Unjust Enrichment Class.

229. It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Unjust Enrichment Class without commensurate compensation.

230. Plaintiff and the Rule 23 Unjust Enrichment Class are entitled to equitable restitution of the benefits they conferred on Defendants pursuant to Kansas, Oklahoma, and Tennessee law within the period three years prior to the filing of the complaint through the date of judgment; Kentucky and Missouri law within the period five years prior to the filing of the complaint through the date of judgment; Texas law within the period four years prior to the filing

of the complaint through the date of judgment; and Oregon law within the period six years prior to the filing of the complaint through the date of judgment.

**WHEREFORE**, Plaintiff Christopher Sontag prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and relevant state law.

D. Designation of Plaintiff as representative of the Rule 23 Class, and counsel of record as Class Counsel.

E. An award of unpaid minimum wages, unreimbursed expenses, and overtime wages pursuant to the state statutes.

F. An award of damages under state statutes, based on Defendants' failure to pay minimum wages and overtime wages, calculated as an additional one time of back wages as liquidated damages, attorneys' fees, and costs.

G. An award of restitution for unjust enrichment under Kansas, Kentucky, Missouri, Oklahoma, Oregon, Tennessee, and Texas law.

H. Liquidated damages under the FLSA.

I. An award of prejudgment and post-judgment interest.

J. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K. Such other legal and equitable relief as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all counts.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff here designates Kansas City, Kansas as place of trial.

Respectfully submitted,

**BRADY & ASSOCIATES**

*s/Michael F. Brady*
Michael F. Brady, KS #18630
2118 W. 120th Street
Leawood, KS 66209
913-696-0925
brady@mbradylaw.com

And

Andrew R. Biller *(Pro Hac Vice Forthcoming)*
Andrew P. Kimble *(Pro Hac Vice Forthcoming)*

Laura E. Farmwald *(Pro Hac Vice Forthcoming)*
Emily A. Hubbard *(Pro Hac Vice Forthcoming)*
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*
*lfarmwald@billerkimble.com*